IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TERESA D. CULP,**

    **Plaintiff,**

    **v.**                                                    **Case No.  07-2103-JWL**

**TIMOTHY M. SIFERS, M.D., P.A. and**
**TIMOTHY L. SIFERS, as the Executor**
**of the Estate of Timothy M. Sifers, M.D.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

This lawsuit arises from complications following a bariatric weight reduction surgery that was performed on plaintiff Teresa Culp by Timothy M. Sifers, M.D., who is now deceased. Ms. Culp alleges that Dr. Sifers was supposed to perform the surgery using a new technique called the duodenal switch, a procedure that is allegedly associated with fewer complications than older weight loss procedures, but that Dr. Sifers actually performed an unrecognized and unknown variation of a much older procedure and, as a result, Ms. Culp suffered severe complications. Ms. Culp asserts claims against Dr. Sifers' medical practice and his estate (collectively referred to as Dr. Sifers) for fraud, negligence, battery, and a violation of the Kansas Consumer Protection Act. This matter is currently before the court on defendants' Motion for Summary Judgment (doc. #37) based on the applicable statutes of limitations. For the reasons explained below, the court will deny the motion as to

plaintiff's fraud and negligence claims and will grant the motion as to plaintiff's battery and Kansas Consumer Protection Act claims.

## STATEMENT OF MATERIAL FACTS[1]

Plaintiff Teresa Culp saw a Healthwatch segment of KMBC-9 news that featured Dr. Sifers. The segment discussed a "new" weight reduction procedure that had fewer side effects than other procedures and featured Dr. Sifers as a surgeon who performed the "new" procedure. Ms. Culp did some Internet research on the new procedure, the duodenal switch, and then contacted Dr. Sifers to discuss having that surgery performed. Her initial consultation with Dr. Sifers was on May 31, 2001, and she underwent weight loss surgery on August 28, 2001.

During the consultation on May, 31, 2001, Ms. Culp indicated that she had seen the Healthwatch segment and was interested in the surgery. Ms. Culp does not remember whether the specific term, "duodenal switch," which had been the subject of the Healthwatch segment, was specifically used in the consultation. Dr. Sifers, though, acknowledged she had seen the television segment because throughout the medical records he indicated that she was referred by "TV." They did not discuss any other surgery options.

---

[1] Consistent with the well established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party.

2

Dr. Sifers specifically testified in his deposition that he "wasn't making a distinction at all at that time about the two [meaning the biliopancreatic diversion and the duodenal switch]. As a matter of fact, [he] was even calling the procedure a duodenal switch back then." According to Dr. Sifers, he used the terms "duodenal switch" and "biliopancreatic diversion" interchangeably in his medical reports and in his representations to his patients. He explained that he usually used the term "duodenal switch" instead of biliopancreatic diversion because it was "easier to say."

The surgery was performed on August 28, 2001. Dr. Sifers contends that he performed a biliopancreatic diversion. In support of this, he points out that prior to her surgery Ms. Culp signed a consent authorizing him to perform a "biliary [sic] pancreatic diversion with partial gastrectomy" and that his operative notes list the operation performed as "[b]iliopancreatic diversion."

Ms. Culp, on the other hand, contends that Dr. Sifers performed an unknown and unrecognized procedure despite his representations that he would perform the duodenal switch procedure. As to the term "biliary pancreatic diversion with partial gastrectomy," Ms. Culp does not specifically remember signing the consent form but she remembered that same term in an insurance letter. After seeing it in the letter, she researched it on the Internet. When Ms. Culp input that term into a search engine, it pulled up biliopancreatic diversion with duodenal switch, so she figured that she and Dr. Sifers were "on the same path." She also points out that the medical records reference several different medical terms for the procedure. Also, his standing orders for her suggest that he was performing the

3

duodenal switch, as those orders are entitled "Standing Orders for Vertical Banded Gastoplasty and Duodenal Switches" and they state as follows: "For duodenal switches: patient will receive ½ golytely prep and Reglan 10mg from office." Regardless of the parties' dispute about the nature of the procedure actually performed, it is uncontroverted that, unbeknownst to Ms. Culp, Dr. Sifers did not perform the duodenal switch or even the biliopancreatic diversion with duodenal switch.

Ms. Culp suffered from a number of complications following the surgery.[2] Dr. Sifers' motion for summary judgment is grounded in the notion that by January 2005 she had begun experiencing a multitude of health problems beyond what she associated with the duodenal switch procedure. For example, she had to have her gall bladder removed; she had constant diarrhea, bloating, and stomach pain; she had anal bleeding; she had a ventral hernia; she suffered dry, flaky, pale skin; she experienced constant hunger; she experienced shortness of breath; she had headaches; she had hair loss; she had poor sleep patterns; she had nausea; she developed shortness of breath; she suffered from fatigue; and she suffered a horrid increase in the frequency and odor of her bowel movements and gas.

Dr. Sifers saw Ms. Culp for a total of nineteen visits for a period of two years on the following dates: May 31, 2001 (the initial consultation), August 27, 2001 (date of surgery), September 5, 2001, October 15, 2001, November 14, 2001, December 19, 2001, January 16,

---

[2] Ms. Culp knew prior to surgery that there were fewer side effects associated with the duodenal switch than other weight loss surgeries but does not remember talking with Dr. Sifers before the surgery about which exact side effects would occur.

2002, February 14, 2002, March 14, 2002, April 14, 2002, May 16, 2002, June 14, 2002, July 12, 2002, August 15, 2002, September 19, 2002, November 13, 2002, February 26, 2003, March 6, 2003, and August 28, 2003. Dr. Sifers never told Ms. Culp at any of those visits that he had not performed the duodenal switch. Instead, he told her that many of her symptoms were not unusual, but were temporary side effects of the surgery or resulted from other causes. He told her that constant hunger was not unusual after surgery. He told her the acne was a normal hormonal reaction to the "new" surgery and changes to hormones were normal side effects. He told her that headaches were a normal side effect. He told her that her hair loss was the result of vitamin malabsorption, which was a temporary condition from the surgery, and she should cut up her vitamins so they absorb more quickly. He first told her that the diarrhea was normal for the first six to eight months following surgery. After eight months, Dr. Sifers gave her various explanations such as that she was eating the wrong kinds of foods, that it was a temporary side effect, and that it was due to her gallbladder surgery. He told her the gaseous odors were to be expected and it would get better with time and suggested a pill that Ms. Culp could buy over the Internet to alleviate the problem. He blamed her anal bleeding on hemorrhoids. He said her bloating was due to improper eating, and then later told her it was the result of a problem with her gallbladder. Dr. Sifers told her first that her iron levels were low and that she was anemic, and then gave this as the reason why she was fatigued. He said her shortness of breath was because she needed to exercise more. In sum, he always told Ms. Culp each time she came to him with complaints that the symptoms she was experiencing were either normal or not a side effect of her weight loss

surgery; he did not ever tell her that the symptoms were a result of a bariatric surgery other than the duodenal switch or that these were unexpected complications of the surgery.

Additionally, Dr. Sifers performed the gall bladder surgery on Ms. Culp in 2003. She requested that he perform the surgery at Overland Park Regional Medical Center, where she had the bariatric surgery, instead of Shawnee Mission as Dr. Sifers suggested. Dr. Sifers responded that he did not have weight loss surgery privileges there because he was performing the "new" surgery, and they would not approve him until he had performed at least 500 of these "new" surgeries. After noting that he would be performing gallbladder surgery and not weight loss surgery, Dr. Sifers determined he would perform that surgery at Overland Park.

Ms. Culp remained under the belief that she had received the duodenal switch after her surgery and up until around January 31, 2007. At that time, Ms. Culp's psychiatrist asked her if she had seen the two articles in the *Pitch Magazine* about Dr. Sifers. Ms. Culp responded that she had not. She went home and performed an Internet search for the articles. She read both of them and discovered that he had not performed the duodenal switch procedure. Ms. Culp filed her complaint in this case on March 6, 2007, asserting claims for fraud, negligence, battery, and a violation of the Kansas Consumer Protection Act.

Dr. Sifers now moves for summary judgment on plaintiff's claims against him based on the applicable statutes of limitation and repose. Defendants' theory is that by January 11, 2005, Ms. Culp knew that she was experiencing a multitude of debilitating symptoms that she did not believe to be associated with the duodenal switch procedure, so she had reason

6

to investigate the circumstances of her ongoing health problems and suspect that the surgery was not performed correctly. Consequently, plaintiff's various claims (which are governed by one, two, three, and four year statutes of limitations and repose) that were filed more than one, two, three, or four years later from the applicable dates are time barred. Plaintiff, on the other hand, argues that she did not discover that Dr. Sifers had performed the wrong surgery until January 2007, when she discovered the articles on the Internet.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d

at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**ANALYSIS**

For the reasons explained below, the record contains disputed issues of fact sufficient for plaintiff to survive summary judgment on her fraud and negligence claims. A rational trier of fact could conclude that she could not have discovered the alleged fraud with reasonable diligence because in her interactions with Dr. Sifers during subsequent office visits he lulled her into confidence that her symptoms were normal symptoms of the new procedure or were not caused by the procedure at all. For essentially similar reasons, a question of fact exists concerning whether Dr. Sifers should be equitably estopped from asserting the statutes of limitation or repose on her negligence claim on the grounds that he fraudulently concealed from her that he performed the wrong surgery. Defendants are entitled to summary judgment on plaintiff's battery and Kansas Consumer Protection Act claims, however, because those claims are not subject to any similar discovery or tolling doctrines.

**I.      Fraud Claim**

In Kansas, a fraud claim has a two-year statute of limitations. K.S.A. § 60-513(a)(3). The claim does not accrue "until the fraud is discovered." *Id.* Under Kansas law, fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered. *Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 465, 790 P.2d 404, 415 (1990); *Waite v. Adler*, 239 Kan. 1, 6, 716 P.2d 524, 527 (1986). Mere suspicion of wrongdoing will not suffice where the plaintiff foregoes further investigation by virtue of having been lulled into confidence by the offending party. *Price v. Grimes*, 234

Kan. 898, 900, 677 P.2d 969, 972 (1989); *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 63, 643 P.2d 100, 108 (1982). The issue of when a plaintiff discovered or should have discovered alleged fraud is a question of fact. *Bryson v. Wichita State Univ.*, 19 Kan. App. 2d 1104, 1109, 880 P.2d 800, 804 (1994); *see also Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304, 1306-07 (10th Cir. 1984).

Here, the court has no difficulty concluding that a rational trier of fact could find that Ms. Culp could not have discovered the alleged fraud with reasonable diligence by January 2005, as defendant alleges. Certainly, as defendants point out, by January 2005 Ms. Culp was aware that she was suffering from numerous symptoms, some of which she did not believe should have been associated with the duodenal switch procedure. But, viewing the record in the light most favorable to Ms. Culp, Dr. Sifers lulled her into confidence from pursuing any further investigation into the matter by virtue of their interactions during nineteen visits for over two years. He had numerous opportunities to tell her that he had not performed the duodenal switch procedure on her, a procedure that allegedly would have avoided the vast majority of her symptoms. Instead, he told her that the symptoms she was experiencing were normal, would get better over time, or had some other reasoning that never included that he had not performed the duodenal switch. Also, despite that Ms. Culp could not recall whether Dr. Sifers actually used the term duodenal switch in her consultation, she referenced the Healthwatch show and the "new" procedure in her conversations with him, and consequently he indicated in her records that she was referred by "TV." She also said they never discussed any other procedures. In fact, Dr. Sifers even

testified in his deposition that he used the terms biliopancreatic diversion and duodenal switch interchangeably with his patients. Dr. Sifers also used several other terms to describe the procedure throughout her medical records, and most importantly he used the "duodenal switch" on some of Ms. Culp's various orders. Dr. Sifers even told Ms. Culp during discussions about her gall bladder surgery in February 2003 that he did not have weight loss surgery procedure privileges at Overland Park Regional Medical Center because he was performing the "new" surgery, and they would not approve him until he had performed at least 500 of those "new" surgeries. A rational trier of fact could conclude that the repeated assurances over nineteen visits, in which Dr. Sifers never mentioned that he did not perform the "new" surgery, could have lulled Ms. Culp into confidence that he performed the duodenal switch surgery and prevented her from investigating potential causes of her symptoms other than what Dr. Sifers told her. The issue of when Ms. Culp could have discovered with reasonable diligence that she did not receive the duodenal switch procedure originally promised to her by Dr. Sifers is a question of fact. Accordingly, this aspect of defendants' motion for summary judgment is denied.[3]

## II. Negligence Claim

---

[3] Plaintiff may also be entitled to the tolling of the statute of limitations on her fraud claim under a fraudulent concealment theory. *See Robinson v. Shah*, 23 Kan. App. 2d 812, 823-27, 936 P.2d 784, 793-95 (1997). The court declines to address this particular issue at this procedural juncture, however, because the summary judgment record is sufficient for plaintiff to survive summary judgment on her fraud claim based on the discovery rule in any event.

Medical negligence actions must be brought within two years of the date of injury or the date the injury becomes reasonably ascertainable to the injured party. *Smith v. Graham*, 282 Kan. 651, 655, 147 P.3d 859, 863 (2006) (citing K.S.A. § 60-513(a)(7), (c)). Additionally, no such action shall be commenced more than four years "beyond the time of the act giving rise to the cause of action." § 60-513(c). This creates a four-year statute of repose on medical malpractice actions. *Harding v. K.C. Wall Prods., Inc.*, 250 Kan. 655, 668, 831 P.2d 958, 968 (1992). Here, the act giving rise to plaintiff's cause of action was the weight loss procedure performed by Dr. Sifers. He performed this surgery on August 28, 2001. Plaintiff did not file her complaint until March 6, 2007, which was well over four years after August 28, 2001. Consequently, her claim would ordinarily be barred by the statute of repose.

In this case, however, Ms. Culp argues that Dr. Sifers is equitably estopped from asserting the statute of limitations or the statute of repose as a defense because he fraudulently concealed from her the fact that he performed a different procedure. The Kansas Court of Appeals has held that "the defendant in a malpractice case cannot take advantage of a defense based on the statute of limitations or the statute of repose where the defendant's own fraudulent concealment has resulted in the delay in discovering the defendant's wrongful actions." *Robinson v. Shah*, 23 Kan. App. 2d 812, 832, 936 P.2d 784, 798 (1997). Under those circumstances, the defendant is equitably estopped from raising the defenses of the statute of limitations and the statute of repose." *Id.* In *Robinson*, a medical malpractice action, the defendant physician had performed a hysterectomy on the plaintiff. *Id.* at 814,

12

936 P.2d at 787. Approximately one week after the surgery, she began to experience abdominal distress. *Id.* X-rays revealed that a surgical sponge had been left in her abdomen, but the defendant physician fraudulently concealed that fact from her and told her the x-rays were negative and that there were no apparent or unusual complications from the recent abdominal surgery. *Id.* Over the next several years, she continued to see the same physician for gynecological check-ups and she continued to experience abdominal pain and discomfort, but at no time did the physician tell her about the surgical sponge. *Id.* at 814-15, 936 P.2d at 788-89. It was not until nearly ten years later that the plaintiff first learned about the sponge through another physician. *Id.* at 815, 936 P.2d at 788. The court ruled that if the plaintiff were able to prove at trial that she was prevented from discovering that she had a cause of action against the physician for negligence in leaving surgical sponges in her abdomen by the physician's own fraudulent conduct and misrepresentation, the physician would be equitably estopped from raising the defenses of the statute of limitations and the statute of repose. *Id.* at 832-33, 936 P.2d at 798. Consequently, the court reversed and remanded the issue to the trial court for a trial on the merits of this issue. *Id.* at 833, 936 P.2d at 799.

Similarly, here, the record raises a genuine issue of fact concerning whether Dr. Sifers should be equitably estopped from raising the defenses of the statute of limitation and the statute of repose on the grounds that his own fraudulent conduct and misrepresentation resulted in the delay in plaintiff discovering that he performed the wrong bariatric surgery on her. Like the plaintiff in *Robinson*, Ms. Culp went back to Dr. Sifers and complained

13

about her various post-surgical symptoms. Viewing the record in the light most favorable to Ms. Culp, Dr. Sifers knew that he had performed a different procedure than the one that had been referenced in their initial consultation and he knew that the procedure he performed was often accompanied by the various complications plaintiff was suffering. Yet, at no time when Ms. Culp spoke with Dr. Sifers about her ongoing symptoms during all her follow-up visits did Dr. Sifers tell her that her symptoms were unexpected complications of weight loss surgery, but instead often told her they were expected side effects or resulted from other causes. Ms. Culp continued to see Dr. Sifers for seventeen office visits over the course of two years after the surgery and at no time did he disclose to her that he had not performed the duodenal switch procedure even though he knew he had not done so. He even represented to Ms. Culp that he could not perform weight loss surgeries at Overland Park Regional Medical Center because he was performing the "new" surgery and had to perform 500 of them before he would get privileges there. Under these circumstances, whether Dr. Sifers should be permitted to take advantage of the statute of limitations or the statute of repose where his arguably fraudulent concealment of material facts resulted in a delay that prevented Ms. Culp from discovering her claim against him is an issue which must be resolved at a trial on the merits.

The court further notes that defendants' reliance on *Bradley v. Val-Majias*, 238 F. Supp. 2d 1242 (D. Kan. 2002), is misplaced. There, the court accurately pointed out that under the Kansas Court of Appeals' holding in *Robinson*, a defendant is not equitably estopped from raising the defense of the statute of limitations or the statute of repose if the

14

plaintiff discovered the wrong within sufficient time to permit the filing of the action within the statute of limitations or the statute of repose. *Id.* at 1253; *Robinson*, 23 Kan. App. 2d at 829-30, 936 P.2d at 796-97. This argument, however, assumes that Ms. Culp should have discovered the fraud within the statute of limitations or the statute of repose. As already discussed, viewing the record in the light most favorable to plaintiff, she is not attributed with having discovered Dr. Sifers' alleged fraud until around January 31, 2007. This, of course, was after the medical malpractice statute of limitations and statute of repose had already expired on her claim. Thus, the court finds this argument to be without merit. Accordingly, this aspect of defendants' motion for summary judgment is denied.

### III.  Battery Claim

Plaintiff's battery claim is subject to the one-year statute of limitations provided in K.S.A. § 60-514(b). "Battery is defined as the unprivileged touching or striking of one person or another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." *Baska v. Scherzer*, 283 Kan. 750, 756, 156 P.3d 617, 622 (2007) (quotation omitted). Here, the asserted claim of battery is Dr. Sifers' performance of an allegedly unauthorized weight loss procedure on plaintiff. This surgery took place on August 28, 2001. Thus, the statute of limitations on this claim expired one year later on August 28, 2002, which was over four years before this case was filed on March 6, 2007. Unlike the statute of limitations set forth in § 60-513 governing plaintiff's fraud and medical malpractice claims as discussed above, § 60-514 does not contain a discovery rule

15

and plaintiff has not argued that any particular tolling doctrine applies to this claim. Accordingly, summary judgment on plaintiff's battery claim is granted.

### IV.     Kansas Consumer Protection Act Claim

Plaintiff's claim under the Kansas Consumer Protection Act is subject to the three-year statute of limitations provided in K.S.A. § 60-512(2). *Williamson v. Amrani*, 283 Kan. 227, 242, 152 P.3d 60, 71 (2007). Here, plaintiff's claim under the KCPA is premised on Dr. Sifers' alleged misrepresentations prior to her surgery, including the representations he made on the Healthwatch segment concerning the type of weight loss procedure he was performing with his patients as well as the representations he made to her concerning the type of procedure he would be performing on her. These representations occurred prior to her surgery on August 28, 2001. Therefore, the statute of limitations on that claim expired before August 28, 2004, which was over two years before she filed her complaint on March 6, 2007.

Plaintiff contends that this cause of action accrues only upon discovery of the violation. In support of this argument, plaintiff relies on cases that have applied the discovery rule to KCPA claims under the rationale that they are fraud-based claims. *See, e.g.*, *Rubin v. Riffe Homes, Inc.*, Case No. 98-2118-JWL, 1999 WL 588182, at *3 (D. Kan. July 26, 1999); *Alexander v. Certified Master Builder Corp.*, 43 F. Supp. 2d 1243, 1249 (1999). The Kansas Court of Appeals, however, rejected this approach first in the unpublished case of *Johnsmeyer v. Hanover Development Co. II*, Case No. 93,158, 2005 WL 2495817, at *2-*4 (Kan. Ct. App. Oct. 7, 2005) (per curiam) (unpublished opinion), and

16

more recently in the published decision of *Four Seasons Apartments, Ltd. v. AAA Glass Serv., Inc.*, 37 Kan. App. 2d 248, 250, 152 P.3d 101, 104 (2007).  In applying Kansas law, this court is not bound by its own earlier predictions of state law where the Kansas Court of Appeals has more recently decided the issue.  *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1207 n.1 (10th Cir. 2002) (the court must "follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise").  Consequently, the court finds plaintiff's reliance on the discovery rule to be without merit in the context of her KCPA claim.  Accordingly, summary judgment on this claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Summary Judgment (doc. #37) is denied as to plaintiff's fraud and negligence claims, and is granted as to plaintiff's battery and Kansas Consumer Protection Act claims.

**IT IS SO ORDERED** this 4th day of February, 2007.

s/ John W. Lungstrum_____
John W. Lungstrum
United States District Judge