**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

TERESA D. CULP,

    Plaintiff,

    v.                                                                            Case No.  07-2103-JWL

TIMOTHY L. SIFERS, as the Executor of
the Estate of TIMOTHY M. SIFERS, M.D.,
and TIMOTHY M. SIFERS, M.D., P.A.,

    Defendants.

**MEMORANDUM AND ORDER**

This lawsuit arises from complications following a bariatric weight reduction surgery that was performed on plaintiff Teresa Culp by Timothy M. Sifers, M.D., who is now deceased.  Ms. Culp alleges that Dr. Sifers was supposed to perform the surgery using a new technique called the "duodenal switch," a procedure that is allegedly associated with fewer complications than older weight loss procedures, but that Dr. Sifers actually performed an unrecognized and unknown variation of an older procedure known as the "biliopancreatic diversion" and, as a result, Ms. Culp suffered severe complications.  Ms. Culp asserts claims against Dr. Sifers' estate for fraud and negligence, and against his medical practice, Timothy M. Sifers, M.D., P.A., for negligence.[1]  This matter is currently before the court on the

---

[1] Ms. Culp also asserted claims for battery and a violation of the Kansas Consumer Protection Act.  The court granted summary judgment against plaintiff on those claims based on the statute of limitations.  *See generally Culp v. Timothy M. Sifers, M.D., P.A.*, 533 F. Supp. 2d 1119 (D. Kan. 2007).

motion of Dr. Sifers' medical practice (i.e., the professional association itself) to dismiss (doc. #62) plaintiff's negligence claim against the professional association. Because the motion was filed after the professional association filed its answer,[2] the court will construe the motion as one for judgment on the pleadings pursuant to Rule 12(c) and, for the reasons explained below, the court will convert the motion in part to a motion for summary judgment insofar as plaintiff seeks to impose liability against the professional association for Dr. Sifers' alleged negligence. Under the applicable legal standards, the court will grant the motion without prejudice to plaintiff seeking leave to amend her complaint.

## BACKGROUND

According to the allegations in plaintiff's complaint,[3] Ms. Culp had struggled with her weight since she was a young child. While sitting at home one evening in 2000, she was watching the Channel 9 evening news segment of Healthwatch in which Kelly Eckerman advised viewers that a new weight loss procedure called the "duodenal switch" was being offered in the Kansas City area. The news segment included an interview with Timothy M. Sifers, M.D. who, it was reported, was the only surgeon in the Kansas City area performing

---

[2] Defendants filed their answer on March 23, 2007, *see* Answer (doc. #9), and the professional association filed the current motion to dismiss nearly one year later on March 7, 2008.

[3] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and therefore also a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the court accepts as true all well pleaded factual allegations in plaintiff's complaint.

2

the new procedure. After a period of time, Ms. Culp decided to call Dr. Sifers' office to inquire about the surgery. When she went to see Dr. Sifers for her consultation, he represented that he would be performing the biliopancreatic diversion with duodenal switch. Ms. Culp had the surgery on August 28, 2001, and, unbeknownst to her, Dr. Sifers instead performed an unknown variation of several older weight reduction procedures. She suffered severe complications following the surgery, and years later she eventually learned that Dr. Sifers had performed a different procedure than she believed he was to perform.

The claim currently at issue is Count III, which is Ms. Culp's claim for negligence against Dr. Sifers' medical practice, Timothy M. Sifers, M.D., P.A. Therein, she alleges that the professional association's employees, agents, and servants were negligent in the following respects: they knew or should have known that Dr. Sifers was not performing the duodenal switch procedure as he had held himself out that he would perform; they failed to establish measures to ensure that each patient including Ms. Culp was clearly informed that Dr. Sifers was actually performing a different procedure than the one he had promised; they failed to ensure that each patient including Ms. Culp was informed of this fact prior to the patient giving consent; they failed to establish and use procedures to ensure that each patient including Ms. Culp was informed of this fact; they failed to promptly correct any misrepresentation that patients including Ms. Culp may have been given; and they failed to promptly correct the mistake they had made in calling the procedure the duodenal switch when that mistake was brought to their attention. Ms. Culp alleges that she suffered damages

as a direct and proximate result of these actions by the professional association's employees, agents, and servants.

The professional association now moves to dismiss Ms. Culp's negligence claim against it on various grounds. The initial basis for the motion rests on an affidavit from Rita L. Noll, the chief attorney for the Kansas Health Care Stabilization Fund. Ms. Noll states in her affidavit that both Dr. Sifers and the defendant professional association were health care providers in compliance with the Health Care Stabilization Fund who qualified for coverage under the fund in this case for personal injury claims arising out of the rendering of or failure to render professional services. Plaintiff has not submitted any argument or evidence to attempt to controvert this affidavit.

## APPLICABLE LEGAL STANDARDS

### A. Partial Conversion of the Motion to One for Summary Judgment

The parties have submitted various documents, including Ms. Noll's affidavit and deposition testimony, in support of their respective positions on the current motion. These documents are not referred to in the complaint and/or are not central to Ms. Culp's claims, and therefore it is well established that the court must convert the motion into one for summary judgment if it relies on these materials from outside the complaint. *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). Upon converting the motion to one for summary judgment, the court "must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Id.* The required

notice may be actual or constructive. *David v. City of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). The submission of evidentiary materials by the movant, the nonmovant, or both of them constitutes sufficient notice. *Id.* The court has discretion in deciding whether to convert a motion to dismiss (or, here, a motion for judgment on the pleadings, which is analyzed by the same standards as a motion to dismiss) into a motion for summary judgment by accepting or rejecting the attached documents. *Poole v. County of Otero*, 271 F.3d 955, 957 n.2 (10th Cir 2001).

In this case, the defendant professional association attached Ms. Noll's affidavit to its initial motion. Consequently, plaintiff had constructive notice that the motion sought summary judgment on this issue, and plaintiff did not seek to controvert Ms. Noll's affidavit by suggesting that Ms. Noll has wrongly stated that Dr. Sifers and the professional association are both qualified for coverage under the Health Care Stabilization Fund. Instead, plaintiff raises other arguments as to why her claim against the professional association is not barred. The contents of the affidavit is necessary to an understanding of the nature of the parties' arguments. For that reason, the court will exercise its discretion and accept this affidavit in resolving the motion, thus converting the motion in part to one for summary judgment insofar as the professional association argues that it cannot be held vicariously liable for the actions of Dr. Sifers. *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

In response to the professional association's motion, plaintiff submitted deposition testimony from three other employees of the professional association. The professional association, then, filed further suggestions in support of its motion to which it attached additional deposition testimony. And, finally, plaintiff submitted a surreply brief with yet additional deposition testimony. Insofar as the parties' arguments rest on this additional deposition testimony, the court will exercise its discretion and reject the deposition testimony and related arguments. Unlike Ms. Noll's affidavit, which clearly is uncontroverted and its legal ramifications are readily apparent, this various deposition testimony submitted by the parties delves further into disputed factual issues. As such, to the extent that the parties wanted the court to consider this evidence, they should have submitted the original motion and corresponding briefs and memoranda in summary judgment format so that the court could properly consider the motion as one for summary judgment. Because they did not do so, the court will not now consider these documents and resolve the motion as one for summary judgment, particularly because the court finds that plaintiff's claim against the professional association does not contain sufficient factual allegations to state a claim in any event and the factual record submitted by plaintiff would not change the court's disposition of this claim. Accordingly, other than as stated above, the court declines to convert the motion to one for summary judgment.

**B.    <u>Summary Judgment Standard</u>**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Scott v. Harris*, 17 S. Ct. 1769, 1774 (2007)).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Libertarian Party v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**C.      Legal Standard for a Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) is analyzed using the same standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S. Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant

is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION[4]

For the reasons explained below, the court will grant summary judgment on Ms. Culp's claim against the professional association insofar as she is claiming that the medical practice itself is vicariously liable for Dr. Sifers' negligence. The remainder of plaintiff's claim against the professional association, then, is based on its alleged vicarious liability for its other employees' alleged negligence. As to that aspect of the claim, plaintiff's complaint does not contain sufficient factual allegations to state a plausible claim that any of the medical practice's employees other than Dr. Sifers owed her a legal duty. Accordingly, the court will dismiss the remaining aspect of the claim.

### A. <u>Vicarious Liability for Dr. Sifers' Actions</u>

The professional association initially based its motion on its argument that it and Dr. Sifers are both health care providers who are qualified for coverage under the Health Care

---

[4] In addition to the arguments discussed below, the professional association also argues that Ms. Culp's claim that it is "jointly and severally liable" for her injuries is barred because Kansas has abolished the concept of joint and several liability in negligence actions. *See* K.S.A. § 60-258a; *Yetsko v. Panure*, 272 Kan. 741, 745, 35 P.3d 904, 907 (2001). Plaintiff does not dispute this point, and explains that she has submitted a motion for leave to file an amended complaint that abandons any such reference to "joint and several liability." The court does not find any such pleading on file, however, and therefore the court will grant this aspect of the professional association's motion on the basis that plaintiff has abandoned this legal theory.

9

Stabilization Fund, and therefore the professional association cannot be held vicariously liable for Dr. Sifers' alleged negligent acts. The applicable Kansas statute provides as follows:

> A health care provider who is qualified for coverage under the fund shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund. . . .

K.S.A. § 40-3403(h). It is well settled that this statute "abrogates vicarious liability where both health care providers . . . are covered by the Health Care Stabilization Fund." *Glassman v. Costello*, 267 Kan. 509, 523, 986 P.2d 1050, 1060 (1999); *see generally Lemuz v. Fieser*, 261 Kan. 936, 933 P.2d 134 (1997) (upholding the constitutionality of this statute).

The overall thrust of plaintiff's arguments in opposition to the professional association's motion is in explaining that her claim against the association arises out of the wrongful acts of its employees Regina Bratzler, Kelly Alley, and Celina Sifers. The court does note, however, that plaintiff briefly cites paragraph 113 in the applicable Count III of her complaint in which she alleges that she suffered damages as a result of the negligence of Dr. Sifers, the professional association, and the professional association's employees. And, she states that her claim against the association "arises out of the negligent acts of not only Dr. Sifers but also in the wrongful acts of the employees of" the association (including Ms. Bratzler, Ms. Alley, and Ms. Sifers). Out of an abundance of caution, then, the court will address this claim to the extent that plaintiff might still be seeking to impose vicarious

10

liability on the professional association for Dr. Sifers' alleged negligence because it is not entirely clear to the court that plaintiff has necessarily abandoned this aspect of her claim.

On this point, Ms. Noll's affidavit is uncontroverted that Dr. Sifers and the professional association are both health care providers in compliance with the Health Care Stabilization Fund and are qualified for coverage in this case is uncontroverted. Consequently, the professional association is entitled to summary judgment insofar as plaintiff is seeking to impose vicarious liability on the association itself for Dr. Sifers' alleged medical malpractice. *See, e.g.*, *Treaster v. HealthSouth Corp.*, 442 F. Supp. 2d 1171, 1185 (D. Kan. 2006) (granting hospital's motion for summary judgment insofar as it could not be held vicariously liable for physician's alleged medical negligence).

### B.     Vicarious Liability for the Professional Association's Other Employees' Actions

Again, the predominant focus of plaintiff's arguments in opposition to the professional association's motion is explaining that the claim is based on the actions of other employees of the professional association. In response, the professional association argues that plaintiff does not allege that any health care provider other than Dr. Sifers owed her any sort of a duty, or that any health care provider other than Dr. Sifers even saw plaintiff as a patient. To state a negligence claim under Kansas law, plaintiff must allege facts that show the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. *Smith v. Kan. Gas Serv. Co.*, 285 Kan. 33, 39, 169 P.3d 1052, 1057 (2007); *Yount v. Deibert*, 282 Kan. 619, 623-24, 147 P.3d 1065, 1070 (2006). A tort is a breach of duty imposed by law. *McCormick v. Bd. of County Comm'rs*, 272 Kan.

11

627, 648, 35 P.3d 815, 831 (2001). Thus, in order to be liable for negligence, a defendant must owe a duty of care to the injured plaintiff. *Id.* The existence of a duty is a question of law. *Id.* "Without a legal duty, there can be no compensable negligence." *Irvin v. Smith*, 272 Kan. 112, 122, 31 P.3d 934, 942 (2001).

Here, the court's analysis of plaintiff's negligence claim against the professional association – insofar as that claim is based on the alleged negligence of employees other than Dr. Sifers – begins and ends with the lack of a legal duty of care. Plaintiff did not even respond to defendant's argument concerning the lack of a duty and her complaint does not allege that the employees of the professional association owed her any particular duty. Consequently, the court is left to speculate about a plausible theory of legal duty based on the facts alleged in her complaint. Based on her allegations, the court cannot discern any basis for finding that the professional association's employees had a legal duty to inform plaintiff about the nature of the procedure.

Insofar as plaintiff might seek to impose liability under a traditional medical malpractice theory – that is, that the association's employees owed her a duty of care – that theory fails because "[a]bsent the existence of a physician-patient relationship, there can be no liability for medical malpractice." *Irvin*, 272 Kan. at 122, 31 P.3d at 942. Here, the facts alleged in plaintiff's complaint indicate that the only physician-patient relationship in existence with respect to plaintiff's operation was between her and Dr. Sifers. And, as explained above, the professional association cannot be vicariously liable for Dr. Sifers'

12

actions. Consequently, the association cannot be held liable under a traditional medical malpractice duty-of-care theory.

The overall thrust of plaintiff's allegations against the professional association seems to be that its employees failed to inform her about what procedure Dr. Sifers was going to perform. This sounds in the nature of a duty to disclose or, stated otherwise, an informed consent issue. It is well settled under Kansas law that consent must be informed, which requires a physician to make a reasonable disclosure to the patient of the nature and probable consequences of the recommended surgery and a reasonable disclosure of the possible dangers. *Bartal v. Brower*, 268 Kan. 195, 202, 993 P.2d 629, 634 (1999) (citing *Natanson v. Kline*, 186 Kan. 393, 410, 350 P.2d 1093 (1960)). Thus, in the absence of an emergency a physician or surgeon has a legal obligation to disclose the risks and dangers incident to a proposed medical or surgical procedure so that his or her patient can make an informed consent thereto. *Funke v. Fieldman*, 212 Kan. 524, 532, 512 P.2d 539, 546 (1973). Kansas courts have not, however, extended the duty of disclosure beyond the physician rendering the complained-of treatment. *See, e.g.*, *Nold ex rel. Nold v. Binyon*, 272 Kan. 87, 105, 31 P.3d 274, 286 (2001) (woman's physician has duty to inform); *Bartal*, 268 Kan. at 202, 993 P.2d at 634 (physician must make reasonable disclosure of the nature, probable consequences, and possible dangers of the recommended surgery); *Wozniak v. Lipoff*, 242 Kan. 583, 597-98, 750 P.2d 971, 982 (1988) (discussing physician's duty of disclosure); *Wecker v. Amend*, 22 Kan. App. 2d 498, 500-01, 918 P.2d 658, 660-61 (1996) (discussing physician's duty of disclosure in obtaining informed consent); *Nichols v. Central*

*Merchandise, Inc.*, 16 Kan. App. 2d 65, 67-68, 817 P.2d 1131, 1133 (1991) (doctor as learned intermediary, not pharmacist, has legal duty to warn the patient of potential consequences of a drug prescribed by the doctor). Presumably this is because the duty of disclosure stems from the fiduciary nature of the relationship between a physician and patient. *See Natanson*, 186 Kan. at 403-04, 350 P.2d at 1101-02 (observing that "the relation between the physician and patient is a fiduciary one, and therefore the physician has an obligation to make a full and frank disclosure to the patient of all pertinent facts relating to his [or her] illness").

Here, plaintiff's complaint contains no factual allegations that the relevant employees of the professional association were anything more than office personnel. No facts are alleged from which it could be inferred that any of them stood in a fiduciary relation with her – perhaps based on their superior learning, skill, or expertise – that would give rise to a duty to disclose the nature of the procedure that was going to be performed on her. Accordingly, plaintiff's claim against the employees of the professional association other than Dr. Sifers cannot plausibly be based on a duty to disclose. *See generally, e.g.*, *Nichols*, 16 Kan. App. 2d at 65, 817 P.2d at 1131 (affirming trial court's grant of summary judgment based on pharmacist's lack of duty to warn plaintiff of potential side effects of drug prescribed by plaintiff's treating physician).

The professional association argues that any claim asserted by plaintiff against it based on a corporate negligence theory is barred by the Kansas Supreme Court's holding in *McVay v. Rich*, 255 Kan. 371, 874 P.2d 641 (1994) (holding a plaintiff's claim against a

14

hospital for negligently extending staff privileges was barred by Kansas statutes prohibiting vicarious liability where both health care providers are covered by the Health Care Stabilization Fund). In response, plaintiff argues that *McVay* does not apply here because she is not proceeding against the medical practice based on a theory of corporate negligence. In support of this argument, plaintiff cites *Aldoroty v. HCA Health Servs.*, 265 Kan. 666, 962 P.2d 501 (1998), in which the Kansas Supreme Court confined its prior holding in *McVay* to instances in which the plaintiff was proceeding based on a corporate negligence theory. *Id.* at 682, 962 P.2d at 511. Importantly, however, in *Aldoroty*, there was evidence concerning the duty owed by the hospital to the plaintiff. *See id.* at 672, 962 P.2d at 506 ("It is agreed that [the hospital's] duty was to manage its health audits so that prior [X-ray] films were available to radiologists for comparison."). The court in *Aldoroty* concluded that the hospital's duty and the radiologists' duty were close links in the same chain, and therefore it was up to the jury to compare the hospital's negligence with that of the radiologists. *Id.* at 682, 962 P.2d at 511.

Unlike in *Aldoroty*, here plaintiff still has not directed the court's attention to any particular duty owed to plaintiff by the professional association itself. And, the court has carefully reviewed the factual allegations in plaintiff's complaint and finds that they are more akin to general claims of action or inaction by the practice rather than any specific acts of its employees during the course of plaintiff's treatment, in particular. Thus, plaintiff would have no claim against the professional association if Dr. Sifers had not negligently injured her. *See Bische ex rel. Donahoo v. Hosp. Dist. No. 1*, 149 P.3d 547, 2007 WL 92669, at *2 (Kan.

App. Jan. 12, 2007) (unpublished table opinion) (discussing *McVay* and *Aldoroty* and affirming the trial court's grant of summary judgment in favor of hospital based on the plaintiff's general claims regarding the action or inaction of the hospital rather than any specific acts of the hospital's employees during the plaintiff's surgical procedure). Accordingly, based on the allegations set forth in the complaint, plaintiff has failed to state a cognizable claim against the professional association.

In sum, plaintiff's complaint does not contain factual allegations from which a legal duty could be inferred. Plaintiff has not directed the court's attention to anything that would raise the right to relief above a speculative level. Because this claim does not appear to be plausible on its face, then, the professional association is entitled to judgment on the pleadings with respect to the remaining aspect of this claim. Out of an abundance of caution, however, the court will grant the motion without prejudice to plaintiff filing a motion on or before **May 23, 2008**, seeking leave to amend her complaint if she believes that she can allege facts from which she can point to a legal duty owed by the association's employees to plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Timothy M. Sifers, M.D., P.A.'s Motion to Dismiss Count III of Plaintiff's Complaint (doc. #62) is granted without prejudice to plaintiff filing a motion on or before **May 23, 2008**, seeking leave to amend her complaint.

**IT IS SO ORDERED** this 5th day of May, 2008.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge